May it please the court, my name is David Figueroa, appearing on behalf of petitioner and appellant Jorge Montes. Before I begin, with the court's permission, the appellant would like to request one minute for a rebuttal. Sure. Thank you. This case essentially asks two questions. First, was the admission of the appellant's confession a violation of his Fifth Amendment rights against self-incrimination due to the conduct of the detectives in questioning him using their, what appellant contends is coercive police conduct? And on top of that, was the determination that the appellant's confession was not the product of coercion wrong and unreasonable? And appellant would submit that it was wrong and unreasonable for both the Court of Appeal and the district, excuse me, the district court to rule that it was not unreasonable. Would the court care for a brief presentation of the facts? Well, I guess the question I have for you, I mean, we've read, you know, all your briefing, and I think we're pretty familiar with the record. Under AEDPA, you have the burden to rebut the state's factual, state court factual determination by clear and convincing evidence. And what evidence do you have to meet that standard, given the factual finding? Sure. And I'm focusing specifically on the causation issue, that it was the failing of the polygraph test that triggered the confession, not the statements with regard to separation from its charge. Absolutely, Your Honor. Under the, I believe it's the People v. Morey decision, the court says, really, what is the motivating cause of the confession? And I think the record would clearly indicate that the motivating cause was petitioner's fear of losing his daughters. Well, I'm not sure that's responsive to my question. The question is, what evidence do you have that is clear and convincing that rebuts the trial court's factual finding after listening to the entire totality of the interrogation, that it was the polygraph and not the family threats that triggered the confession? Excuse me before you answer. Could you turn the volume down just a little bit, get a little feedback? Thanks. Do you understand the question? I understand the question. I believe that in the trial court proceeding, counsel there, it seems that the argument the trial counsel made was more in regards to the failure to give a second Miranda warning. I believe the trial court's opinion even says that he only mentioned in passing the fact that the police tactics were coercive and that they made reference to never seeing his daughters again, that someone else would be calling them mija or they would be calling someone else daddy. So I'm not sure that the trial court even sufficiently made a ruling or understood what was going on in terms of the police conduct or trial counsel even made a sufficient argument with that regard. Part of the trial court's order focused on the Miranda question, whether he needed to be Mirandized again the very next morning. And the trial court said, well, it was essentially a continuation of the same interrogation that had begun the night before when he had been properly admonished and waived. So, again, I think that's a legal conclusion. I guess it's a mixed question of law and fact. But on the assumption that the court was addressing the Fifth Amendment issue, what evidence can you point us to that is clear and convincing that rebuts the factual finding that it was the failure of the polygraph that was the triggering cause of his decision to confess? I think the record reflects in the timeline of when the polygraph examination began and when the polygraph examiner said, the results say you've been deceptive. It's 99 to 100 percent sure you've been deceptive. And I believe that's at the excerpt of record at 250. It wasn't until 11 pages later there was more conversation. The petitioner continued to deny involvement, continued to say, all I want to see is my daughters. It wasn't until then he even broke down and cried before the confession eventually came. So I think it's clear, and I think even the district court opinion, I wouldn't say overrules, but makes a different finding in terms of the conduct being contemporaneous, that it was still in his mind that... Your argument falls into the trap that federal courts on habeas review may not relitigate the factual determination unless you can point us to some evidence in the record that was clearly overlooked by the state court. And here I don't see any indication that the fact finder, the superior court judge, ignored or overlooked any of this evidence. You just don't like the conclusion that he reached, which was the triggering cause was telling him he failed to polygraph. So on the deferential standard of review under ADPA, how can I get to the place you want us to get to, which is to grant relief? I understand that, and I think that in rereading the trial court's opinion, I don't even think there is a factual finding sufficiently argued other than them saying the trial counsel mentions it in passing, but... Let me ask a question following up on Judge Talman's question. I think he's identified a real problem that you have with respect to the confession, the third interview. As I understand it, your contention is that he was coerced into taking the polygraph to begin with. Is that right? Not necessarily. I think... Not what your brief said? No. I think that the standard is more that his will was eventually overborne, that he voluntarily agreed to the first interview, he agreed to take the polygraph exam, but not that his confession was eventually as a result of his will being overborne due to the contemporaneous police coercive conduct. I understood your arguments to be the confession was involuntary, argument two, he was coerced into taking the polygraph, but if that's not your position, then it's not your position. I believe it's the confession was coerced due to the conduct, not taking the polygraph exam. What do I do at S.E.R. 106 with those two paragraphs in which the superior court judge essentially makes his ruling? I'm starting at line 12, in which he says, I find that what was most critical in the defendant's mind was during the polygraph interview, the polygraph examiner apparently made a very strong position that he, the examiner, knew that your client, referring to defense counsel, was lying about not being there. And that is not improper, no less than lying about evidence that implicates somebody being interviewed. Your client, in my opinion, made a knowing, intelligent decision to give the second statement that turned into a confession. His will was not overborne, as shown by his denying originally to the first set of officers any involvement in the offense, and so on. I mean, to me, that's a pretty clear factual finding. Right. And I believe the standard under the People v. Guerra case is that there is deference given to that court unless it's not substantiated by the evidence. And I think the fact that I mentioned in the second excerpt of record that there's 11 more pages of questioning by the polygraph examiner before the petitioner eventually makes his confession. But there's nothing in the record to indicate that the trial court judge overlooked that fact. I think the fact that his opinion is substantially, you know, in reference to the Miranda questions, and the only mention about the police conduct and the fact that he wanted to see his daughter is this one-line, like, abstract that he says trial counsel mentioned it in passing. So I'm not sure that the opinion even makes a factual finding as to whether or not the police conduct was coercive and whether that had any effect on his admissions at all. So you're down to about a minute, Mr. Figueroa. I want to waive my time until the rebuttal. Good morning, Your Honors. Deputy Attorney General Noah Hill on behalf of Respondent. May it please the Court. The California Court of Appeal reasonably determined that petitioner statements admitting his presence at the scene of the offense were voluntary and not the product of coercion or implied promises of leniency on the part of the detectives. And the district court properly affirmed or properly rejected the petition on this basis. The state court reasonably determined the facts of the petitioner's case and its rejection of the petitioner's claim was wholly consistent with clearly established federal law. There's been some discussion this morning from petitioner concerning the sufficiency of the factual findings of the trial court with respect to the statements that the detectives made to petitioner during the interrogation. And first, the trial court did find that the motivating cause was nothing other than the failure of the polygraph examination. But I would point out that petitioner's counsel in the trial court did not predicate his suppression motion on the statements concerning his daughters and the detective statements concerning daughters and family. There was a passing mention in some 20-something pages of argument in the trial court. But this was not the basis of the claim in the trial court. It became my point is that to the extent that counsel is claiming that somehow there's an insufficiency in the state court findings, that that insufficiency is predicated on the absence of his own presentation of the claim. Are you arguing waiver? No, no, I'm not arguing waiver. I'm simply pointing out a reason why there is not a greater comment upon that portion. The trial court was focused on that defense claim. That's correct. Not on the claim that they're now pressing before us on federal habeas. That's exactly correct, Your Honor. So procedurally, though, does that matter in terms of how we approach our review of the issue? No, not in any way. The relevant state court opinion in this case is the California Court of Appeals opinion, which squarely dealt with petitioner's claim that has been presented, exhausted and presented in district court and is pending here before this court. And I believe that the first, there is no clear and convincing evidence that overcomes the finding of the state court in this case. Petitioner can point to nothing that shows that this is an erroneous determination. There's no new evidence presented in the district court. Your Honor, make sure I understand. You don't disagree that what the officer said was coercive, do you? No, Your Honor. We don't disagree that there is some level of coercion to the officer's statement. How do we know that that's not what induced him to confess? Well, I think by looking at the totality of the circumstances. And first you see that although these statements were made, they were not received by the petitioner. And I would back up and make a distinction between these statements and statements in cases like Lynham, statements in cases even like Brown, where there are, you cooperate with us and you're going to get this benefit. That's not what was said. And without defending some of the statements that the officers made in this case, it was you're going to go to prison if you're convicted based on the evidence that I've laid out before you. More than that, you won't see your child again. If you're convicted as a result of your conviction, you won't see your child again. That's correct. You better give us your rendition to try to minimize your conduct, or otherwise you won't see your kid again is basically what it came up with. If that's what you choose to do, that will be a result. The way you can save yourself, see your kid, is to minimize your role, tell us what you did and give us a mitigating account of your behavior. There were, I don't think it goes quite that far. But irrespective of that, petitioner didn't, as the district court found, was combative as a result of those statements, he didn't bend to any of those statements. He certainly didn't make any statement that he was present during the scene of the offense during the portion of the interview where those threats were made. What the interview, the totality of the interview shows is that petitioner made incremental admissions based on being confronted with a verifiable evidence that showed that what he was saying was false. First, petitioner says, you know, I crashed my car, and it was towed to an impound yard at the time of the offense. And the officers say, well, you know, that's not true and we can verify that. Then he says, well, I wasn't there and I don't know anything. This goes on, and then there are these comments made about his family during that time. But it wasn't until the officers played petitioner a tape recording, an audio tape recording, of his cohort DS implicating petitioner in the offense as the driver and the mastermind that petitioner then says, I'm going to tell you what I know. At this point, petitioner sticks with this particular false story, I only lent my car to DS, I didn't know what he was going to do with it, agrees to a lie detector test. And I would point out that before petitioner even makes that statement, the officers say, you know, we're just going to book you, I'm going to go home, I'm going to end this interview. And petitioner says, well, what about me? What if I tell you what I know? So it's in that context that petitioner tells his next story, that I only lent my car to DS. The following day, after the lie detector test, after the polygraph examination, he's told that this shows that you're being untruthful. He initially says, yet another story. Well, I know more than I said that I knew. I know more people that were involved and I knew that something else happened, but I didn't tell the detectives exactly what that was. And the polygraph examiner says, you know, that's not true, because one of the questions that you failed was that you were there, or that you weren't there, as the case may be. It's then once again presented with demonstrable evidence that his stories are untrue. He changes his story yet again and tells third, fourth story, which is not a true story. Again, as shown by the jury's verdicts in this case, that I was only there, I was forced to participate. I didn't know what was going to happen, I was threatened, I was only the driver. The totalities of these circumstances show that it wasn't what the officer said, but what Petitioner was confronted with during the course of the interview. I think if you also look at the way that Petitioner handled the statements from the officers, that is informative as to the degree of coercion in this case. This isn't a case like Tingle, where the defendant cried, sobbed for ten minutes straight at the thought of losing their child. It isn't even like Brown, where the defendant sort of went along and made statements immediately after the polygraph examiner was telling him that she wants to see him with his child. Petitioner was very different. Petitioner responded to these statements by the detectives by saying things like, you're trying to frame me, you're trying to put words in my mouth. If I'm not guilty, I'm not going to prison. Complains about the way that the detectives are treating him. Tells him that what they're saying is ridiculous and sad and bullshit. At one point, Petitioner says, at the end of the day, nothing's true, so can I go out now? This is like, this is all bullshit right now. It's in this context that the level of coercion needs to be evaluated. Again, unlike a defendant in Tingle, Petitioner is not a stranger to the judicial process. He was a convicted felon on supervised probation for possession of a loaded firearm. He had prior experience with an interrogation process and discussed that with the detectives and with the polygraph examiner in this case. So this is somebody who's very differently situated than the defendant in some of the cases that Petitioner points to. So for all of these reasons, respondents would ask this court to affirm the judgment of the district court. Thank you very much, Mr. Hill. Mr. Figueroa, you've got about a minute left. Thank you, Your Honor. A few points that I want to touch upon after counsel made his statements, I believe, confirmed the point that I was trying to make. First, that the interviews, the three interviews were contemporaneous, as the trial court found. They occurred within approximately one 24-hour period, and if, giving deference to the trial court, if it was so contemporaneous that he didn't need to be given a second Miranda warning, that the coercive effects from the first interview should also be contemporaneous, be ruled that it was part of one long interview. And the district court's opinion says there's no question that during the interrogation, the detectives used what the court would characterize as questionable tactics to convince the petitioner to confess. So in that regard, it supports the opinion that under the totality of these circumstances, all the things that the police detectives did was coercive, was over the line. What do we do with the recitation that Mr. Hill gave us of the confrontation with conflicting evidence and then culminating in the failure of the test? I think that supports the contention that his will was overborne. He remains steadfast that... There's no case that holds that it's a coercive interrogation tactic to recite evidence that the police have that is inconsistent with the story that the suspect is telling, is there? Not to my knowledge, but I think the fact that he continues to deny his involvement, even being placed with this evidence with the tape from Saul Diaz... I don't think I've ever seen a confession where an individual told the whole story the first time the detectives interrogated him. It's always an iterative process. But I think your point is a good one, that an improper interrogation technique can sort of taint and bleed through. But here we have a number of, I don't know what you'd call them, intervening confrontations with actual evidence in the case, and then the polygraph to support what the trial court found as a matter of fact. I think the two quick points I would make in that regard is that the People v. Loper case says that it can go on for a few days, these coercive tactics, and I think in that case it also went over to the next day and they found that the taint still affected the confession. And I think the last thing is that with all the statements that the petitioner made, it was always peppered with, I just want to see my daughters. I promise my daughter I'll see her the next day. That was always something he said before any statement was made.
judges: SILVERMAN, TALLMAN, RAWLINSON